Van Brunt, P J
The facts agreed upon are as follows: The New York, Providence and Boston Railroad, whose road extends from. New London and Stonington, Connecticut, to Providence, Rhode Island, was incorporated by the legislature of state of Rhode Island m June, 1832.
Mr. Matthew Morgan, of New York, father of Henry and Edward Morgan, the above named assignors, and founder of the firm of Matthew Morgan & Son, bankers of New York, was first president of the company, and that firm were its financial agents. After Matthew Morgan’s death his son continued the banking business, changing the firm name to M. Morgan’s Sons, and one of them, Henry Morgan, the senior partner of the firm, in September, 1867, became treasurer of the railroad company, and continued to serve in that capacity, being elected year by year, until. June, 1884; and the firm of M. Morgan’s Sons continued to act as the financial agents of the railroad company; they kept the transfer books, etc., of the railroad company, and. paid all dividends to stockholders, and frequently were in advance to the company. Henry Morgan, who was one of the largest individual stockholders of the railroad company, served as treasurer of the railroad company without salary, and the firm of M. Morgan’s Sons neither-charged nor allowed interest on the railroad company’s account. The account itself on the firm’s books was kept in the name of the New York, Providence^ and Boston Railroad Company, and on the books of the railroad company the account was kept in the name of M. Morgan’s Sons. " The railroad company did not keep an account in the name of Henry Morgan, treasurer. Remittances were at one time made to the order of the treasurer, but after December, 1880, at the request of Henry Morgan, made, because of expected absence, the remittances were sent, though so far as the minutes show, no action was taken by the board of directors on the subject) direct to the order of the firm of M. Morgan’s Sons. The-annual printed reports, *447 distributed to the stockholders of the railroad company, stated the funds in the hands of “M. Morgan’s Sons;” there was no statement showing funds in the hands of the treasurer.
In June, 1884, the firm of M. Morgan’s Sons failed, and made an assignment without preferences. The individual members of the firm, Henry and Edward Morgan, at the same time made assignments, without preferences, of their individual estate. All the assignments were made to William P. Dixon. The books of the firm of M. Morgan’s Sons show that at the time of the failure there was due the railroad company the sum of $94,000. The debts of the firm of M. Morgan’s Sons were large, and the creditors of the firm will receive but a portion of the amount due them. The admitted debts of the individual members of the firm were small and will be paid in full.
Under the foregoing state of facts it is claimed by the plaintiffs that they are creditors of the individual estate of Henry Morgan, and by the defendant it is urged that they are simply creditors of the firm of M. Morgan’s Sons.
It will be observed that prior to December, 1880, although the account itself, on the books of the firm, was kept in the name of the plaintiff, and on the books of plaintiff in the name of the firm, remittances were made to the order of the treasurer, and while the business was conducted in this manner there seems to be no reasonable ground upon which a denial of the individual liability of the treasurer could be based. His office as treasurer was recognized, his primary right to receive and hold the money was admitted, and the money must necessarily have passed through his hands because remittances were made to his order. The matter of selecting a depository remained with him, and he had the light to claim at any moment from the firm the balance due deposited by him.
The-duty reposed upon the treasurer was the safe keeping of the money of the corporation, which he represented, and it is boubtful if the directors could, even by affirmative action, make his . duties merely nominal, and relieve him from liability for the safe keeping of the funds; much less could they do so by mere acquiescence in the selection by the treasurer of the depository of the corporation’s money. The subsequent change in the method of doing business by making remittances direct to the firm in no way changed the legal relations of the parties. This change was made at the request of the treasurer, because of his expected absence, the inference being that the change was made because, if the remittances were made to his order as before, they needing his indorsement, which could not be procured during his absence, they could not be *448 used for the purposes of the corporation. This change was made to suit the convenience of Mr. Morgan and not at the suggestion of the corporation. It is true that by acquieaence the directors of the corporation assented to it, but the effect of the arrangement was simply to give the agents of the treasurer more ample powers. The office of treasurer still existed; his rights, duties and liabilities remained the same, and he was individually hable for the default of his agents to the same extent as before.
The conclusion to which we must, therefore, arrive, is that the plaintiff is entitled to be paid the amount of its claim out of the individual estate of Mr. Henry Morgan.
Judgment accordingly, with costs.
Brady and Daniels, JJ., concur.